DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Veronica Williams, appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights to her minor child and placed him in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.
 {¶ 2} Williams is the natural mother of E.H., born January 7, 2005. E.H. was placed in CSB custody shortly after he was born because Williams was not caring for him or bonding with him. As E.H. developed, it became apparent that he had multiple health problems, which have not been fully diagnosed, including severe asthma, numerous allergies, and skin eruptions. He requires special care including breathing treatments, a special diet, and his skin must be treated numerous times a day with a particular gentle skin cleanser or lotion.
 {¶ 3} Williams has a mental illness and, at the time E.H. was removed from her care, she was not taking her prescribed medication. CSB was familiar with Williams through a prior case involving her four older children, who were placed in the legal custody of their grandmother in 2003. Williams had been diagnosed with paranoid schizophrenia, and also had a history of failing to take prescribed medication on a regular basis. Without medication, Williams became a threat to herself and others, as she had hallucinations and delusions.
 {¶ 4} E.H. was adjudicated a dependent child on April 21, 2005. CSB moved for permanent custody on November 7, 2005. Following an evidentiary hearing, the trial court found that E.H. should not be placed with his mother due to her chronic mental illness and that permanent custody was in his best interest. Therefore, it terminated parental rights and placed E.H. in the permanent custody of CSB. Williams appeals and raises two assignments of error.
 ASSIGNMENT OF ERROR I
"The trial court's decision granting CSB's motion for permanent custody was against the manifest weight of the evidence, contrary to law and/or an abuse of discretion and was not in the best interest of the minor [child]."
 {¶ 5} Williams contends that the trial court erred in placing E.H. in the permanent custody of CSB. Before a juvenile court can terminate parental rights and award to a proper moving agency permanent custody of a child, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of the prior 22 months, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1) and 2151.414(B)(2); see, also, In re WilliamS. (1996), 75 Ohio St.3d 95, 99.
 {¶ 6} The trial court found that the first prong of the test was satisfied because Williams' chronic mental illness prevented her from parenting E.H. Pursuant to R.C. 2151.414(E)(2), because the trial court found that Williams had a chronic mental illness that was "so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the [hearing]," it was required to enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent.
 {¶ 7} Although Williams contends that the trial court's finding on the first prong was erroneous, she fails to articulate any argument in support. A review of the record reveals ample evidence to support this finding. Although this Court is not normally inclined to address an argument that was not made, because Williams' failure to take care of her mental illness also pertained to the trial court's best interest determination, we will detail some of the evidence supporting the trial court's finding.
 {¶ 8} Williams' treating psychiatrist testified that he had been treating Williams for four years and that she had been diagnosed with paranoid schizophrenia. Her mental illness is characterized by hallucinations and delusions and must be treated with medication. Unfortunately, Williams had a long history of failing to take her prescribed medication on a consistent basis. Williams had earlier lost custody of four older children due to her failure to cope with her mental illness.
 {¶ 9} The psychiatrist explained that Williams did not believe that she had a mental illness, which suggested that she did not believe that her medication was necessary and may again stop taking it. During the four years that the psychiatrist had been treating her, Williams had been on and off medication several times, and had sometimes required hospitalization. Williams had never remained stabilized on medication for more than a few months at a time. Williams' psychiatrist explained that when Williams stopped taking her medication, she would become psychotic and could be harmful to herself or others. Moreover, she would become unable to care for even herself. The psychiatrist further testified that, even while taking her medication, Williams had poor insight into her illness and exercised poor judgment. Several witnesses expressed concern about the ability of Williams to care for E.H., particularly given that he had multiple health problems and required special care.
 {¶ 10} Throughout most of the case plan period, Williams failed to treat her mental illness. As of October, 2005, nearly nine months after E.H. was removed from her care, Williams was not taking her medication regularly. In fact, Williams had to be hospitalized more than once during the case plan period because she became psychotic.
 {¶ 11} At the time of the permanent custody hearing, which was more than 14 months after E.H. had been removed from the home, Williams had been stabilized on her medication for several months, although she had missed a few doses of medication. Her psychiatrist suggested, however, that her current compliance with medication was likely due to the fact that she received injections every two weeks to supplement her oral medications. She received medication by injection because she had a history of noncompliance. Injected medication is apparently longer-lasting and the patient's compliance can be monitored by the medical provider because the patient must come to the clinic to receive the injection.
 {¶ 12} Home-care providers also visited Williams at home to assist her with medical and non-medical aspects of her life, including helping her pay bills and monitoring whether she was taking her oral medication at home. With that assistance, Williams had managed to stabilize her condition for a few months.
 {¶ 13} Moreover, the evidence revealed that Williams was admittedly taking her medication regularly for the sole purpose of getting her child back. Service providers expressed concern that, if Williams were to accomplish that goal and be reunited with E.H., she would again stop taking her medication. As already noted, Williams did not seem to believe that her medication was necessary for her own mental well-being.
 {¶ 14} Given the severity of Williams' mental illness, her long history of failing to comply with the prescribed plan of treatment necessary to manage her illness, and the concern of her psychiatrist and others that she may again stop taking her medication, there was ample evidence before the trial court from which it could conclude that Williams suffered from a mental illness that was so severe that it made her unable to care for E.H. at the current time or any time in the near future.
 {¶ 15} Williams also challenges the trial court's determination that permanent custody was in the best interest of E.H. When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must consider the following factors:
"(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
"(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
"(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; [and]
"(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]" R.C.2151.414(D)(1)-(4).[1]
 {¶ 16} Although the trial court is not precluded from considering other relevant factors, the statute explicitly requires the court to consider all of the enumerated factors. SeeIn re Smith (Jan. 2, 2002), 9th Dist. No. 20711, 2002-Ohio-34; see, also, In re Palladino, 11th Dist. No. 2002-G-2445, 2002-Ohio-5606, ¶ 24.
 {¶ 17} The best interest prong of the permanent custody test requires the agency to prove by clear and convincing evidence that permanent custody is in the best interest of the child. Clear and convincing evidence is that which will produce in the trier of fact "`a firm belief or conviction as to the facts sought to be established.'" In re Adoption of Holcomb (1985),18 Ohio St.3d 361, 368, quoting Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 18} Williams' interaction with E.H. had been limited to two supervised, weekly visits at the CSB visitation center. During the second weekly visit, Williams became upset and attempted to take E.H. from the visitation center. She refused to surrender the child to CSB staff and the police had to intervene to retrieve the child. Because Williams had also attempted to flee the visitation center a few years earlier with two of her older children, and because CSB was concerned that Williams was not taking her medication and was mentally unstable, CSB moved for a no contact order. The trial court issued a no contact order and visitations were suspended. Visitation never resumed, apparently because CSB and the court never received verification from Williams' psychiatrist that she was no longer a threat to her child.
 {¶ 19} Consequently, at the time of the permanent custody hearing, Williams had visited with E.H. only two times in the past year. Because E.H. was only 14 months old at the time of the hearing, not only was there no bond between mother and child, they did not even know each other. E.H. had several medical conditions that had not been fully diagnosed at that point in his life. He had asthma, numerous allergies, and serious skin condition, all of which required special care. Williams had no idea how to treat his conditions. She had not been visiting with him, nor had she completed parenting classes. Moreover, her psychiatrist testified that, even while on medication, Williams lacks insight and exercises poor judgment. Thus, the guardian ad litem and other witnesses questioned whether Williams could ever have the ability to care for this child.
 {¶ 20} Because E.H. was too young to express his wishes, the guardian ad litem spoke on his behalf. He recommended that E.H. be placed in the permanent custody of CSB. The guardian ad litem had worked with Williams on her prior case with CSB, involving the custody of her four older children. He continued to be concerned that Williams had serious mental health problems and that the longest period that she had stayed on her medication was a few months. According to the guardian ad litem, Williams was "barely able to take care of herself and follow her own treatment recommendations." He emphasized that even at the time of the hearing, when the evidence revealed that she had been taking her medication, she had not been fully compliant with taking every prescribed dose during that period. Moreover, he did not believe that Williams had the ability to care for E.H.'s particular health problems. He further emphasized that Williams was not bonded to E.H., nor was he bonded to her.
 {¶ 21} The trial court was also required to consider the custodial history of E.H.E.H. was removed from his mother's care shortly after his birth and had spent almost the entire 14 months of his life living in CSB temporary custody, placed in the same foster home. He was doing well in the foster home and the foster parents were interested in adopting him.
 {¶ 22} The evidence further demonstrated that E.H. was in need of a legally secure permanent placement and that neither parent was able to care for him within the foreseeable future. Although CSB contacted Williams' mother about taking custody of E.H., the grandmother did not pursue such a placement. There were no other relatives willing and able to take custody of E.H., nor were there any other permanent placement options available to him. Consequently, the trial court reasonably concluded that a legally secure permanent placement could only be achieved by granting permanent custody to CSB.
 {¶ 23} Given the evidence before the trial court, we cannot say that it lost its way in determining that permanent custody was in the best interest of E.H. Consequently, the trial court did not err in terminating Williams' parental rights and placing E.H. in the permanent custody of CSB. The first assignment of error is overruled.
 ASSIGNMENT OF ERROR II
"The trial court abused its discretion in denying appellant-mother's motion for a second six-month extension of temporary custody and mother's motion for visitation."
 {¶ 24} Williams contends that the trial court erred in denying her motion for a six-month extension.[2] As Williams correctly notes, the trial court's decision to grant or deny an extension of temporary custody in this case was a discretionary one. See R.C. 2151.415(D)(1) and (2). Moreover, R.C. 2151.415(D)(1) authorizes the trial court to extend temporary custody for six months only if it finds, by clear and convincing evidence, that such an extension is in the best interest of the child and that "there has been significant progress on the case plan of the child, and there is reasonable cause to believe that the child will be reunified with one of the parents or otherwise permanently placed within the period of extension."
 {¶ 25} Williams has failed to demonstrate an abuse of discretion by the trial court. As detailed at length above, the evidence before the trial court demonstrated that Williams had not made significant progress on her case plan and there was no reason to believe that E.H. could be reunited with her within the next six months. The second assignment of error is overruled.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Slaby, P.J. Whitmore, J. concur.
[1] The factor set forth in R.C. 2151.414(D)(5) is not relevant in this case.
[2] Although the assigned error also challenges the denial of her motion for visitation, Williams does not argue that point and visitation is moot if permanent custody was appropriate and an extension of temporary custody was not.